ROBERT F. COOK ET AL., APPELLEES, V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.

FILED JANUARY 5, 1907.    No. 14,621.

1. Evidence examined, and *held* sufficient to sustain the judgment of the trial court under the instruction given.

2. Law of Case. Where an instruction of the trial court is concurred in by each of the parties to the action, it will be treated on review as the law of the case.

3 Contributory negligence is an affirmative defense, which must be pleaded, and ordinarily involves questions of fact for the determination of the jury.

4. Carriers: SHIPPING CONTRACT. A condition in a contract for the shipment of live stock by a railway company, which provides that, unless claims for loss, damage or detention are presented within ten days from the date of the unloading of said stock at destination, and before said stock has been mingled with other stock, such claims shall be deemed to be waived, and the carriers and each thereof shall be discharged from liability, is in violation of the prohibition of section 4, art. XI of the constitution of Nebraska.

5. Evidence: FOREIGN STATUTES. The statutes and constitution of another state or territory cannot be proved by parol, under the provisions of section 396 of the code.

6. ———: ———: PRESUMPTIONS. In the absence of proof to the contrary, the constitution and laws in force in this state will be presumed to have been in force at the place of the making of the contract which is in issue.

APPEAL from the district court for Pawnee county; WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*M. A. Low, L. M. Pemberton* and *Hazlett & Jack,* for appellant.

*Stewart & Munger, contra.*

OLDHAM, C.

This was an action to recover damages against the defendant railway company for its failure to properly trans-

port fifteen car-loads of sheep from Roswell, Colorado, to South Omaha, Nebraska, and Chicago, Illinois. The negligence relied on consists in not furnishing proper facilities to plaintiffs for feeding and watering their sheep at convenient places along the line of shipment. The answer of the defendant admitted that it conveyed the sheep between the points named in the petition, and alleged that it did so with proper dispatch, and that it did, at plaintiff's request, stop the train at proper places on its line of railway for plaintiffs to feed and water the sheep. The answer also pleaded that defendant took the sheep under a written contract for an interstate shipment from Hailey, Idaho, to the points of destination, and that this contract included the conveyance of the sheep over a portion of the lines of the Oregon Short Line and the Denver & Rio Grande Railroad, as well as the line of the defendant; that the written contract entered into was valid where made, and provided for a lower rate than the regular tariff rates of transportation. The conditions of the contract pleaded, which are material to the present controversy, are as follows: "The shipper agrees to load, unload and reload all said stock at his own expense and risk, and to feed, water and tend the same at his own expense and risk, while it is in any stock yards, whether the same be operated, owned or controlled by said carriers or otherwise, and while on the cars or at feeding points or at any place where the same may be unloaded for any purpose whatever. The shipper expressly agrees to load, unload and care for said stock, while upon the cars or premises of the carriers, in a careful and humane manner, in strict compliance with the laws of the United States, and of each and every state through which said stock may be transported. Unless claims for loss, damage or detention are presented within ten days from the date of the unloading of said stock at destination and before said stock has been mingled with other stock, such claims shall be deemed to be waived, and the carriers and each thereof shall be dis-

8

charged from liability." The reply of the plaintiffs admitted the signing of the contract with the Oregon Short Line Company at the time of shipment from Hailey, Idaho, but alleged that a new contract was signed with the defendant when the shipment reached Roswell, Colorado, and denied each and every other allegation in the answer, except such as admitted the allegations of the petition. On issues thus joined there was a trial to the court and jury, a verdict for the plaintiffs, and judgment on the verdict. To reverse this judgment defendant appeals to this court.

The first alleged error called to our attention in the brief of the appellant is that "the verdict is contrary to law as given by the court." This contention rests on the proposition that the trial court, in the seventh paragraph of instructions given on its own motion, correctly stated the law governing defendant's liability under the contract for furnishing proper facilities to plaintiffs for feeding and watering the sheep while in transit, and that there is not sufficient evidence in the record to support a verdict under this instruction. The instruction given is as follows: "It was the duty of the defendant to use reasonable care to provide reasonable facilities for both feeding and watering said sheep at the stations along the line of its road, and any failure in the reasonable performance of that duty would be negligence on the part of the defendant. On the other hand, under the written contract entered into by the plaintiffs with the Oregon Short Line Railway, it was the duty of the plaintiffs to feed, water and care for said sheep, and it was not the duty of defendant company to furnish feed and water; and if the defendant company, at the times requested by the plaintiffs, gave the plaintiffs opportunity to unload, care for, feed and water said sheep, and provided plaintiffs with reasonable facilities for so doing, then the defendant company performed its full duty to the plaintiffs. You are further instructed, in connection with this said contract, that its terms, in so far as they are set out in defendant's

answer, are admitted by the plaintiffs' reply, and the terms in said contract are presumed to continue in force, in the absence of evidence that they were changed or modified by a subsequent contract between the plaintiffs and defendant in this case, and the same inures to the benefit of each and every carrier over whose line the said sheep were carried and passed over, and the defendant railway company, from the evidence, the court instructs you, was a connecting carrier in this instance." As this instruction is relied on by defendant as a proper direction to the jury of all the elements entering into defendant's liability to plaintiffs for furnishing proper facilities for feeding and watering the sheep under the contract of shipment, and as it was not excepted to by the plaintiffs when given, we will, for the purpose of the conclusion to be reached, regard it as the settled law of the case and examine into the sufficiency of the testimony to support a verdict under it.

It is without dispute that the contract for the shipment of the sheep from Hailey, Idaho, was procured through the solicitation of Eugene Fox, one of the traveling freight agents of the defendant railway company. It is also in evidence that the plaintiffs, who were extensively engaged in feeding and shipping sheep, had never before shipped to the points in controversy from Idaho over these lines of railroad, but that they had heretofore shipped to points east over the Union Pacific lines of railway; that Fox, as an inducement for shipment over the route in controversy, represented to one of the plaintiffs that convenient and proper places for feeding and watering the sheep were provided at Grand Junction, Colorado, or at Tennessee Pass, a point further east on the route, and at Goodland, Kansas, and at either Belleville, or MacFarland, Kansas, and that pasture and green feed could be obtained at these places. It is also in evidence that one of the plaintiffs in shipping from the state of Kansas had fed and watered his shipment of stock at Belleville, in that state, the year before, and that he inquired if the facilities were the same

as then existed, and was assured by Mr. Fox that they were. This witness described the ample facilities which were afforded him the year before for feeding and watering at this place. After the conversation with Mr. Fox the contract for shipment was entered into, and on the 22d day of June, 1901, the sheep were loaded at Hailey and conveyed to Grand Junction, Colorado, where they were unloaded and rested, and where proper facilities for feeding and watering are conceded to have been furnished. After a proper rest at this point the sheep were reloaded and conveyed, by a run of about 28 hours, to Roswell, Colorado, where the shipment was transferred to defendant's line of railway. The evidence introduced by the defendant tends to show that there were at least some facilities for feeding and watering at Roswell, and Mr. Fox, the freight agent, says that he thinks he named this and one or two other points on the route not named in plaintiff's testimony, as a proper place to feed and water. But this is all the testimony that tends to show that plaintiffs had any information that they might unload at Roswell for that purpose, while plaintiffs' testimony was that his directions were to go to Goodland, Kansas, to unload and feed.

It is in evidence that answers were received in response to telegrams sent ahead to Goodland, informing plaintiffs that feed could be obtained at that place, and that thereupon the shipment proceeded to Goodland, after a run from Roswell of about 10 hours, and the sheep were again unloaded. The evidence is in conflict with reference to the facilities furnished at Goodland. Plaintiffs contend that the only pasturage that they could procure was of a very inferior quality, and that the water had to be taken from a tank and furnished to the sheep in troughs of an inferior quality, so arranged that the sheep would not drink from them. On the contrary, the defendant contends that the facilities for water were ample, and that, because of the wild nature of the sheep, they refused to drink, and that if plaintiffs had made more strenuous efforts they could have procured ample facilities from

neighboring landowners for pasturing their sheep during their stay at this point. The conflict arising between these theories was, to our minds, one to be determined by the triers of the facts.

Before arriving at Goodland, defendant had notified plaintiffs through a telegram that there were no facilities for feeding at Belleville, and after reloading at Goodland it also notified them through a telegram that there were no facilities at MacFarland. When this last telegram was received, plaintiffs asked to have provision made for feeding and watering at the nearest point. Defendant's agents then telegraphed to Belleville, and finally received a communication that they would try to make arrangements for feeding and watering at that place. When Belleville was reached, after an all night's run from Goodland, plaintiffs were informed by defendant's agent that facilities could be procured for pasturing but two or three car-loads of sheep and dry feed could only be had for about the same number. A stop of several hours was made at Belleville, the time being consumed in telegraphing to neighboring stations for facilities for feed and pasture, but, being unable to procure them, the train was run to Lincoln, Nebraska, a distance of abut 100 miles, where ample facilities were procured, and the sheep were unloaded. Plaintiff's evidence tends to show that the sheep were in such a starved and famished condition on their arrival at Lincoln that about 80 of them died in the yards from overeating and overdrinking, and that many of them became sick and disabled, so that they had to be retained for 35 hours at the Lincoln feed yards to put them in condition for reshipment. Five of the car-loads of sheep were taken to South Omaha and placed on the market there, and ten car-loads were transported to Chicago. There is no serious criticism of the facilities furnished for feed and water between Lincoln and Chicago.

As there is no complaint lodged in the brief against the measure of damages awarded, we need only review the sufficiency of the evidence as tending to show plaintiffs'

right to recover under the instruction given for actionable negligence on defendant's part in not furnishing reasonable facilities for feeding and watering the stock while in its charge. It will be noticed that the instruction only imposes upon the defendant the duty of furnishing reasable facilities for feeding and watering the stock at proper places on the line of transit, and does not attempt to impose any duty on the defendant to furnish feed and water at the places of stoppage. Here we might say that, outside of any question of the law of the case, we think the instruction fairly reflects the duty and obligation attaching to the defendant under the contract. Defendant through its agent, who solicited the contract of shipment, knew and should have known what, if any, facilities it had to offer for furnishing feed and water of the kind and character required for the sustenance of the sheep while *en route* to the eastern markets. The evidence shows that the plaintiffs had no information, except such as was communicated to them by defendant's agents, as to where suitable facilities for this purpose could be found along the connecting lines of railway from Hailey, Idaho, to the points of destination. Consequently, plaintiffs had a right to rely on defendant's statements as to the points at which proper facilities would be afforded for the care of the stock. And the evidence offered in their behalf strongly tends to show that they did so.

We think there is competent evidence in the record tending to show that defendant failed in its duty to provide proper and reasonable facilities for the care of the sheep when unloaded, particularly at the points it had suggested in the state of Kansas. After the shipment had begun, the first telegram received from one of the defendant's agents with reference to preparations for feed and water was as follows: "We have no pasture at Belleville, but have plenty of pasture at MacFarland, close to the yards, with good grass and water." This telegram was received on leaving Roswell, Colorado. At Goodland the following telegram was received: "Notify parties in charge of sheep

that there is no facilities at MacFarland for unloading or feeding the sheep there, and wire Mr. Rain what he says." Then, after these two telegrams, a third was received, saying: "Advise men in charge of stock that you will reach Belleville about 5 A. M., the first feeding point. Will arrange for them to feed there. Advise from Smith Center if arrangements are O. K." We think that the confusing nature of these telegrams, first telling them that arrangements had been made at MacFarland for the reception of the stock, and then telling them that no such arrangements had been made, and then finally telling them that arrangements would be made at Belleville, and failing to make proper arrangements for them there, is evidence tending to show actionable negligence on defendant's part in furnishing proper facilities for the care of the stock.

It is next contended that the evidence shows conclusively that plaintiffs were guilty of contributory negligence in permitting the stock to be hauled for such long distances without demanding intermediate stops, and particularly in not feeding and watering the stock at Roswell, Colorado. Contributory negligence is an affirmative defense, which must be pleaded, and ordinarily involves questions of fact to be determined by the jury. The court submitted this question to the jury in two instructions, neither of which is assailed in the brief of the appellant, and we think there is no such conclusive and convincing proof of plaintiffs' negligence as would warrant us in saying, as a matter of law, that they cannot recover. Again, this defense is not specifically pleaded, and this is a sufficient answer to defendant's contention.

The next alleged error called to our attention is in the action of the trial court in giving paragraph 10 of instructions given on its own motion. That was an instruction which, in substance, told the jury that the notice which plaintiffs had given defendant of their loss was sufficient. The notice referred to was a complaint, which plaintiffs had made to defendant's agent at Lincoln, and a subsequent one, which plaintiffs made to defendant's

agent at Salt Lake City, and a written claim of loss filed with the company more than ten days after the sheep had arrived at Chicago. It is urged against this instruction that it ignored the condition of the contract before set out, which required the claim for damages to be presented within ten days of the date of the unloading of the stock at the destination and before the stock had been mingled with other stock. The court evidently regarded this condition of the contract as being in violation of section 4, art. XI of our constitution, which provides that the liability of railroad corporations as common carriers shall not be limited. Similar conditions in like contracts have been before this court for consideration, and in the very recent case of *Union P. R. Co. v. Thompson,* 75 Neb. 464, after a review of our former decisions, it was determined that they would be adhered to in construing such contracts as being in violation of the prohibition of this section of the constitution.

It is urged, however, in the brief of the appellant that the only contracts in which a provision similar to the one in issue has been held void were those entered into in this state, or in a foreign state for shipment of goods into this state, and that, as it was pleaded in the answer that the contract was entered into in Idaho for shipment of stock to either Chicago, Illinois, St. Joseph, Missouri, or South Omaha, Nebraska, and that, as in fact ten car-loads of sheep were shipped and delivered in Chicago, the condition of the contract with reference to notice should be upheld at least as to the sheep that were delivered in Chicago. It is true that the answer alleged that the contract was valid in the state of Idaho, where it was entered into, but the only evidence offered tending to show that the contract was valid in that state was as follows: "Alfred Hazlett, called by the defendant and sworn, testified as follows: Q. Where do you reside? A. I reside at Beatrice, Nebraska. Q. You may state, Mr. Hazlett, if you have examined the constitution of the state of Idaho in force in June, 1901, and now in force, concerning the

question as to whether or not the constitution of that state prohibits a common carrier from limiting its liability as a common carrier in the shipment of live stock or other freight. A. I have. Q. Now you may state what, if any, provision the Idaho constitution contains concerning such limitation." This question was objected to and the objection sustained. Defendant offered to prove by the witness that the constitution of Idaho contained no provision against a common carrier limiting its liability as a common carrier, and this offer was denied. The same questions were offered with reference to the statutes of the state of Idaho, and the same objections were sustained, and the same offer made and denied. Section 396 of the code provides for the proof of statutes, codes, and other written law of other states and territories, by the production of printed copies in volumes of statutes, duly authenticated or published by authority of such states or territories, and provides for proof by parol of only the unwritten or common law of any such foreign state or territory. Defendant made no effort to prove the unwritten or common law in force in the state of Idaho by this witness. Hence, the trial court properly excluded the testimony as to the contents of the constitution and the statutes. In the absence of proof to the contrary, we will presume the constitution and statutes in force in the state of Idaho to be the same as our own. *Smith v. Mason,* 44 Neb. 610.

What is said here in support of the instruction given justifies the action of the trial court in refusing the instructions requested by the defendant. Finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.