D. J. O'BRIEN COMPANY, APPELLEE, v. OMAHA WATER COMPANY, APPELLANT.

FILED DECEMBER 17, 1908. No. 15,409.

1. **Waters**: DEFECTIVE HYDRANT: QUESTION FOR JURY. Where there was evidence to show that a fire hydrant which broke and flooded plaintiff's cellar was in a leaky condition for more than 48 hours before its collapse, the question whether the leaky condition indicated the defect which culminated in its bursting was one of fact, and for the jury.

2. **Instructions** examined, and found to be without error.

3. **Trial**: INSTRUCTIONS. It is not error to refuse an instruction, the substance of which is embraced in ,the charge given by the court on its own motion.

4. ———: ———: CONTRIBUTORY NEGLIGENCE. Where there is no evidence of plaintiff's contributory negligence, instructions submitting that question to the jury are properly refused.

5. **Contributory Negligence** is a matter of defense to be pleaded by defendant, and need not be negatived in the petition. First paragraph of syllabus in *Chicago B. & Q. R. Co. v. Kellogg*, 55 Neb. 748, and *Chicago, St. P., M. & O. R. Co. v. Lagerkrans*, 65 Neb. 566, disapproved.

6. **Evidence of Value**. In an action to recover the value of goods negligently destroyed, the fact that a witness testifying to the

market value thereof has based his estimate upon the cost does not make his testimony incompetent when it further appears that said cost was less than the market value of such goods.

7. **Appeal:** Pleading: Amendment After Verdict. Where an application to amend a petition so as to demand interest on the value of goods destroyed is made after the coming in of the verdict, and no showing of facts excusing the delay appears, the judgment of the district court denying such application will not be disturbed.

Appeal from the district court for Douglas county: William A. Redick, Judge. *Affirmed.*

*Hall & Stout,* for appellant.

*McGilton & Gaines, contra.*

Calkins, C.

The defendant, under a contract with the city of Omaha, furnishes water to the city for fire purposes and to the public for private use. The plaintiff was a manufacturer of candy, occupying a building at the corner of Twelfth and Howard streets. A fire having broken out in the neighborhood on Saturday evening, January 28, 1905, a fire engine was attached to a hydrant which defendant had installed at the said corner, and it was used in extinguishing such fire until about 10 o'clock Sunday morning, when it was detached. Shortly afterwards the employees of the city, under direction of the foreman of the sewer department, attached hose to this hydrant, and used the same to syphon out the cellar of a neighboring building which had been flooded by the water used to extinguish the fire. This use was continued during the afternoon of Monday, January 30, when, while the said employees were endeavoring to close the hydrant, a large section of the bottom thereof broke out, releasing the water to practically the full capacity of the pipe connecting the hydrant with the main. This resulted in the flooding of plaintiff's cellar and the destruction of a large portion of the goods stored

therein.  This action was brought to recover the value of the goods destroyed, on the grounds, first, that the hydrant was originally installed in a negligent manner; and, second, that defendant negligently failed to repair the same after it became in a leaky condition.  There was a verdict for the plaintiff, and from the judgment rendered thereon the defendant appeals.

1. The defendant contends that there was not sufficient evidence to support a verdict for plaintiff, and that the court should have so directed the jury.  An examination of the hydrant after its removal showed that a large piece was broken out of the bottom or heel thereof, which was constructed of cast iron.  There was evidence tending to show that for from one-half to two-thirds of the way around the fracture the iron was rusted, while the remainder showed a freshly broken surface.  There was evidence also tending to show that the hydrant was leaking from shortly after the time at which the engine was attached to it until its final collapse.  It further appears that, following a custom of long standing, the fire department had notified the defendant that this hydrant had been used; and the defendant had, in accordance with its custom, sent an inspector to examine the same.  The plaintiff contends that these facts tended to show first that the hydrant was cracked and in a defective condition; second, that this defective condition was indicated by the leakage of the hydrant during the time it was used in extinguishing the fire and syphoning out the said cellar; and, third, that the defendant was negligent in not ascertaining the cause of the leaky condition and repairing the defect.

If the testimony of the plaintiff's witnesses was true, and the court before it could direct a verdict against the plaintiff must so assume, the facts above stated were established, and there only remains to be considered the question whether negligence might be inferred from those facts.  The defendant places much stress upon the testimony of its inspector, who says that he examined this hydrant after the fire and found it in good condition.  The

flaw in defendant's argument consists in the assumption that this testimony must be true and that it conclusively establishes that the hydrant was not leaking. It is inconsistent with the testimony of the plaintiff's witnesses as to its leaky condition, and, it being a question for the jury to decide, they must be taken to have determined it against the defendant. Whether the leaking of the hydrant should have indicated to the defendant its defective condition is the crucial question in the case, and it was peculiarly one for the jury. As has been repeatedly said, the existence of negligence is generally a question of fact. It is for the jury to determine where the facts are disputed, or where from the undisputed facts different minds may reasonably draw different conclusions as to the existence of negligence.

2. The eighth instruction given by the court on its own motion is as follows: "The gist of this action is negligence, the plaintiff alleging as its claims of negligence (1) that the hydrant was originally installed in a negligent manner, and (2) that defendant negligently failed to repair the same after it became in a leaky condition; but you are instructed that there is no evidence which would warrant you in finding that defendant was negligent in placing or installing the hydrant in question, and your inquiry as to defendant's negligence will be confined to the second ground claimed by plaintiff, as above stated. And on this point you are instructed that it is not sufficient for plaintiff to establish merely that the hydrant was in a leaky condition, and that it finally burst and damaged its property, but it must further establish by a preponderance of the evidence that defendant knew, or by the exercise of ordinary care ought to have known, of its defective condition, and negligently failed to repair it; though you find the hydrant in question was leaky and out of repair, still, if defendant discovered its condition as promptly as ordinary care required, and repaired or replaced the same with reasonable despatch, it would not be liable." The defendant argues that the two paragraphs of instruction

No. 8 are inconsistent, and that the court by it told the jury that, if the hydrant was in a leaky condition, it was defective. The court in its instruction No. 4 had already told the jury that the burden of proof was upon the plaintiff to establish by a preponderance of the evidence that the hydrant in question was defective; and the effect of this instruction was merely to withdraw from the jury the question of negligence in its installation. We do not think the criticism is just. There was evidence upon which it could be fairly based, and it was quite as favorable to defendant as it was entitled to demand.

The defendant also criticizes the second paragraph of the ninth instruction, in which the jury were told: "Upon the other hand, if you find from a preponderance of the evidence that the hydrant was in a defective or leaky condition, and that the defendant negligently failed to discover such condition and repair it before the same was broken, and that without the existence of such negligence on the part of the defendant the hydrant would not have broken, then the defendant would be liable, even though the negligence of the employees of the sewer department may have concurred in producing the injury." It is argued that by this instruction the court told the jury that, if the hydrant was in a leaky condition, that was evidence of the defect in the heel. This criticism is apparently based upon the proposition that the court should have used the word "and" instead of the disjunctive "or." We think it is plain that the court used the two words as synonymous, and that the jury could not have been misled thereby. The only defect that was discovered in the hydrant upon its removal was the break in the heel, and no other cause for its leaky condition is suggested or proved.

3. The defendant complains of the refusal of the court to give two instructions tendered by it as follows: "(1) You are instructed that unless the plaintiff has satisfied you by a preponderance of the evidence that the hydrant which broke at Twelfth and Howard streets was in a de-

fective and leaky condition prior to the 28th day of January, 1905, and that said defendant knew of said defective and leaky condition or by ordinary care and diligence should have known of such defective and leaky condition, then your verdict should be for the defendant. (2) The jury are instructed that plaintiff cannot recover from said defendant any sum whatever unless it has satisfied you by a preponderance of the evidence that the broken condition at the foot of the hydrant, if such condition existed prior to the time of the actual breaking out at the foot of the hydrant, was in such condition as to have warned a reasonably prudent and careful person that said hydrant was defective at the bottom thereof, and it was defendant's duty to repair the same." The effect of the first instruction was to relieve the defendant of any care of said hydrant for the 28th, 29th and 30th days of January, while the principle embodied in the second had already been given to the jury in instruction No. 8 of the court. The court did not, therefore, err in refusing to give the first, and to repeat itself by giving the second.

4. The defendant also complains of the refusal of the court to give instructions numbered 5 and 6 requested by it, in each of which the question was whether the loss suffered by the plaintiff, or any portion thereof, was due to its contributory negligence. As there was no evidence of any contributory negligence on the part of the plaintiff, it would have been error to submit the question to the jury. *Clingan v. Dixon County*, 74 Neb. 807; *Chicago, B. & Q. R. Co. v. Schalkopf*, 54 Neb. 448.

5. It is further contended by the defendant that, because the plaintiff failed to formally allege in its petition that it was without fault, such petition does not state facts sufficient to constitute a cause of action. The great weight of authority is that contributory negligence is a matter of defense to be pleaded by defendant, and need not be negatived in the petition. The cases from other jurisdictions are too numerous to cite, but a reference to them will be found under the title "Negligence" in 37

American Digest, sec. 186. This court having adopted the rule that contributory negligence is an affirmative defense, the burden of proving which is upon the party pleading it (*Rapp v. Sarpy County,* 71 Neb. 382, 385), it logically follows that the plaintiff should not be required to negative such defense. This principle has been recognized in *Union Stock Yards Co. v. Conoyer,* 41 Neb. 617, and *Cook v. Chicago, R. I. & P. R. Co.,* 78 Neb. 64.

But a different rule seems to be announced in the first paragraph of the syllabus in *Chicago, B. & Q. R. Co. v. Kellogg,* 55 Neb. 748. In that case the defendant was contending that the petition was insufficient because it contained no averment that the defendant knew, or ought to have known, of the defective appliance which was responsible for the accident. The petition appears to have contained the allegation that the plaintiff without fault on its part sustained an injury as the proximate consequence of the negligent acts charged against the defendant; and the question we have here presented was not before the court, and evidently not in the mind of the judge writing the opinion. There is a similar statement in the last clause of the first paragraph of the syllabus in *Chicago, St. P., M. & O. R. Co. v. Lagerkrans,* 65 Neb. 566. In this case the petition appears to have contained the allegation that the defendant "carelessly and wrongfully and negligently caused the death of said deceased, without any fault, carelessness or negligence of said deceased." Here again the question whether the petition would have been good without the allegation that the accident occurred without any fault upon the part of the injured person was not presented to the court. It is a fundamental principle that cases are only authority where the question to which they are applied was presented to the mind of, and necessarily decided by, the court; and the cases referred to are not, therefore, opposed to the conclusion we have reached. As the syllabi referred to, taken by themselves, would seem to enunciate a different rule, we have deemed it best to call attention to them, and to

say that, in so far as the same conflict with the conclusion we have here reached, they are disapproved.

6. Finally, the defendant insists that the case must be reversed for errors in proving the value of the goods destroyed. Mr. D. J. O'Brien, the president of the plaintiff, was the witness by whom the plaintiff proved the value of these goods. He testified that he had been engaged in the business of manufacturing candy for 30 years, and was familiar with the value of the articles destroyed. In response to the question as to what was the fair and reasonable market value of the goods before and after the damage, he testified, giving the value of each article item by item, and stating, in most instances at least, that the same was totally destroyed.. Afterwards he was asked: "Q. Now, when you have given your testimony as to their value, state what value, Mr. O'Brien, you have given. A. The cost value to us. Q. The cost value to you? A. Yes, sir. Q. Is that more or less than their fair market value, selling at Omaha at that period? A. It is less than their selling price." The defendant claims that this admission of the witness made his testimony as to the market value incompetent, and cites in support of its position the case of McCook v. McAdams, 76 Neb. 1. In that case the plaintiff and another witness, after having testified that they had made an estimate of the damage to the goods, gave the amount in gross. It appeared that these estimates were based in part upon the original cost of the goods, and the court states that this is not a proper basis for the computation of damages, because it frequently happens that goods on the shelves of a merchant are worth but a fractional part of their cost. The most serious objection to the testimony in that case was the fact that the witness was allowed to estimate the damage in gross. In the instant case the witness gave the market value of the goods in detail item by item, and afterwards, upon being examined upon that point, stated that he had based his estimate upon the cost to the plaintiff. If he had stopped at this point, the argument that his estimate

was infected with one vice found in the estimate of the witnesses in *McCook v. McAdams, supra,* would have been plausible; but he was then asked whether their cost was more or less than their fair market value sold at Omaha at that period, and he answered that it was less than their selling price. The plaintiff was entitled to recover the market value of the goods at Omaha. It was engaged in the manufacture and jobbing of these goods in the Omaha market. The market value of goods in any particular market is determined by the price at which they are selling in such market. There is therefore no distinction between the market value and the selling price. In this case it appears that, in estimating the value of the goods, Mr. O'Brien gave the defendant the benefit of the plaintiff's profits as manufacturer and jobber, and of this the defendant should not complain.

7. The plaintiff did not in its petition demand interest upon the amount of the value of the damaged goods from the date of such damage to the time of the trial; but, after the coming in of the verdict, the plaintiff filed an application for leave to amend its petition to demand the same, and for an order of the court adding to the verdict interest from the date of the loss to the date of the verdict. This application was denied. There is nothing in the record to show what, if any, excuse was given to the court for the plaintiff's delay in asking this amendment, and, in the absence of such showing, we cannot say that the court abused its discretion in refusing the plaintiff permission to make such amendment. If the amendment had been permitted, the right of the court to add interest to the amount of the verdict would have been doubtful. The only case in point we have been able to find is that of *Hallum v. Dickinson,* 47 Ark. 120, 14 S. W. 477, which holds that a court cannot add interest to a verdict.

We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

.          AFFIRMED.